UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


CHARLES BERNARD ROBINSON, JR.,

       Plaintiff,

v.                                 Case No. 3:13cv387-LC/CJK

D. LARSON, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on the defendants' motion to dismiss (doc. 106) and plaintiff's response in opposition (doc. 108).  The matter is referred to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  Upon careful consideration of the parties' submissions and the relevant law, the undersigned concludes the defendants' motion to dismiss should be granted in part and denied in part.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida penal system currently confined at Suwannee Correctional Institution.  Plaintiff initiated this lawsuit on June 26, 2013, by filing a civil rights complaint pursuant to

42 U.S.C. § 1983.  (Doc. 1).  Plaintiff has filed a fourth amended complaint, the operative pleading in this action.  (Doc. 92).  The complaint names three employees of Santa Rosa Correctional Institution ("SRCI") as defendants: Lieutenant D. Larson, Lieutenant Delapp, and Nurse R. Martin.  (*Id.*, p. 1-2).[1]

Plaintiff's complaint sets forth the following factual allegations.  On the morning of December 1, 2011, plaintiff declared a "mental health emergency."  (*Id.*, p. 8; doc. 92-1, p. 22).  Defendant Larson stripped plaintiff of his personal property and comfort items.  (*Id.*).  Plaintiff was subsequently placed in a "housing unit with a broken window that wouldn't completely close, wh[en] it was approximately [thirty] degrees" from December 1 to December 3.  (Doc. 92, p. 8).  Larson turned off the heating system, and "turned on the exhaust vents that pulls in direct air from the outside."  (*Id.*).  Plaintiff reported the situation to several officers during their routine patrols and "through request forms (DC6-236) and grievance process that went unanswered and not returned[.]"  (*Id.*).  Plaintiff also grieved the broken window issue through the inmate located next to him.  (*Id.*).  Because Larson had placed plaintiff on "strip," plaintiff did not have a "mattress, pillow, blankets, sheets, toilet paper or soap[.]" (*Id.*).  At some point on December 1, Larson also authorized Officer

---

[1]   The references to document and page numbers will be to those automatically generated by the CM/ECF system.

J. Jankowski to file a "bogus" disciplinary report against plaintiff in order to "suffer plaintiff on special management meal." (*Id.*). Plaintiff asserts he never violated any rules at SRCI. (*Id.*).

On December 3, 2011, defendants Larson and Delapp approached plaintiff's cell and threatened to spray him with chemical agents. (*Id.*, p. 8-9). Delapp stated, "I will only use two cans [of chemical agents] if you take them to the face head up[.]" (*Id.*, p. 9). After "several more seconds of verbal threats," Delapp walked off. (*Id.*). Larson and Delapp returned to plaintiff's cell with Officer Jacobs, who operated a handheld camera. (*Id.*). Nurse Martin was also present in the dormitory. (*Id.*). Although plaintiff "was never in a recalcitrant nature," Delapp told plaintiff to cease his actions and no further warnings would be given. (*Id.*). Plaintiff stated on camera that "he was being reprisaled on and written false disciplinary infraction in order to suffer on Special Management Meal by Sergeant Mr. D. Larson due to [plaintiff] declaring a mental health emergency on December 1, 2011[.]" (*Id.*). Plaintiff then declared a mental health emergency. (*Id.*). Delapp, Larson, and Martin denied "plaintiff's access to have mental evaluation, which medical staff and security do not have the authority to 'postpone' or 'cancel' a mental health emergency[.]" (*Id.*). Nurse Martin did not document the declared mental health emergency in plaintiff's

medical records.  (*Id.*).

"Plaintiff was later sprayed without warning with multiple cans of 'oleoresin capsicum' against his will and written a bogus disciplinary infraction . . . which was rejected and never processed."  (*Id.*).  Although plaintiff was scheduled to be taken off "strip" status on December 4, he was not given his property until December 7. (*Id.*, p. 10).  Plaintiff was "led to believe by his Mental Health Counselor Mr. Jeffrey Arney on December 1, 2011, . . . that he was being placed on (72)-hour observation by mental health."  (*Id.*).  This "vengeful conduct" was a premeditated "action in order to strip plaintiff for the sole purpose of [applying] chemical agents."  (*Id.*). Plaintiff notes he "was an (S-3) psych grade as an outpatient on close management status" at SRCI from December 1 to December 9.  (*Id.*).

As result of his exposure to cold weather and chemical agents, plaintiff suffered "swollen ankles and feet, damaged skin, . . . lasting psychological injuries and [slight vision] problems[.]"  (*Id.*, p. 8-9).  Plaintiff also "suffered flu symptoms and still is unable to walk adequately."  (*Id.*, p. 9).

Based on these allegations, plaintiff asserts defendants Larson and Delapp violated his Eighth Amendment rights by using excessive force and denying him access to mental health care.  (*Id.*, p. 11).  Plaintiff claims defendant Martin violated

his Eighth and Fourteenth Amendment rights by denying him access to mental health care and failing to document the declared mental health emergency. (*Id.*, p. 11-12). Plaintiff also contends the denial of mental health care violated the Fourteenth Amendment because "plaintiff was treated differently from other inmates." (*Id.*). For relief, plaintiff seeks nominal and punitive damages, declaratory and injunctive relief, attorney's fees, and costs. (*Id.*, p. 11).

The defendants have moved to dismiss several of the claims raised in plaintiff's complaint. (Doc. 106). The defendants argue: (1) "Plaintiff failed to exhaust the available administrative remedies with regard to his allegations that Larson orchestrated Plaintiff's receipt of a disciplinary report or that Plaintiff's cell window was broken"; (2) "Plaintiff's claim of a retaliatory disciplinary report fails to state a claim upon which relief may be granted"; (3) "Plaintiff's allegations of verbal threats fail to state a claim"; (4) "Plaintiff fails to state a claim for an Equal Protection violation"; and (5) "Plaintiff fails to state a claim against Defendant Martin for an Eighth Amendment violation."[2] (*Id.*, p. 2-16). Plaintiff has responded in opposition

---

[2] It is not apparent from plaintiff's complaint that he intended to bring independent claims based on the broken cell window, the December 1, 2011 disciplinary report, or Larson's and Delapp's verbal threats. In the "Statement of Claims" section of the complaint, plaintiff indicates only that the defendants violated his constitutional rights by using excessive force (i.e., applying chemical agents without justification) and denying him access to a mental health evaluation after he declared a psychological emergency on December 3, 2011. (Doc. 92, p. 11-12). Nevertheless, the

to the defendants' motion.  (Doc. 108).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss a complaint where the complaint fails "to state a claim upon which relief can be granted."  In considering a Rule 12(b)(6) motion, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519 (1972), accepts all factual allegations in the complaint as true, and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice.  5B Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1357 (2008).  Further, only well pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff.  *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980);[3] *see*

---

court will address all arguments raised by the defendants in their motion to dismiss.

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Case No. 3:13cv387-LC/CJK

*also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true").  Mere "labels and conclusions" are not accepted as true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A complaint or counterclaim must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim.  *Id.*  The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.  Accordingly, the allegations must nudge the claim "across the line from conceivable to plausible." *Id.* at 570.

DISCUSSION

A.     Exhaustion

Defendants first argue that plaintiff failed to exhaust his administrative remedies with respect to the claim that his cell window was broken and the claim that Larson ordered Officer Jankowski to write plaintiff a false, retaliatory disciplinary report for lewd and lascivious conduct.  (Doc. 106, p. 2-7).

Exhaustion Requirement

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   28 U.S.C. § 1997e(a).   Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *Booth v. Churner*, 532 U.S. 731, 739 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong. *Porter*, 534 U.S. at 524. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth*, 532 U.S. at 734. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See id.* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998). Moreover, the PLRA requires "proper exhaustion" so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81 (2006); *see also id.*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied that the plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Alexander*, 159 F.3d at 1325-26.

The grievance procedures promulgated by the Florida Department of Corrections require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3)

submit an appeal to the Office of the Secretary.  Fla. Admin. Code r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010).

Procedure for Ruling on Motion to Dismiss for Failure to Exhaust Administrative Remedies

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA").  The defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374.  "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374).  Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082.  First, the court looks to the factual allegations in the defendants' motion, and those in the plaintiff's response. *Id*.  If they conflict, the court accepts the plaintiff's version as true.  "If, in that light, the

defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Plaintiff's Administrative Grievances

Plaintiff was required to exhaust his administrative grievances before June 26, 2013, the date he turned his initial complaint over to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.). Defendants argue plaintiff never submitted "any grievances or grievance appeals alleging that his cell window was broken." (Doc. 106, p. 6).

Although plaintiff asserts "all issues of 'broken window,' 'special management meal,' and 'mental health emergency' is all documented and exhausted," (doc. 108, p. 2) plaintiff has failed to identify any specific grievance that references a broken cell window.  The undersigned's independent review of plaintiff's grievances did not reveal any mention of the broken window.  (Doc. 87-1, p. 3-54; doc. 108-1, p. 2-17, 52-54, 58-100).  Nevertheless, plaintiff, did submit grievances indicating he was exposed to cold temperatures while on "strip" for a period of five-and-a-half days. (Doc. 87-1, p. 4; doc. 108-1, p. 11).  Thus, to the extent plaintiff is bringing an Eighth Amendment conditions of confinement claim based on his exposure to cold temperatures, that claim is properly exhausted.  *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 865 (11th Cir. 2008) ("An Eighth Amendment violation may arise from allegations regarding the temperature to which a prisoner is exposed in prison, and the severity and duration of the exposure are relevant to the analysis.") (*citing Chandler v. Crosby*, 379 F.3d 1278, 1294-95 (11th Cir. 2004)).

Defendants also argue that plaintiff "failed to exhaust Defendant Larson's involvement in Plaintiff's receipt of [the disciplinary report for lewd and lascivious exhibition,] or that the disciplinary report was issued in retaliation for Plaintiff declaring a medical emergency." (Doc. 106, p. 6).  For the reasons discussed in the

following section, plaintiff's allegations concerning the retaliatory disciplinary report fail to state a claim on which relief may be granted. The court, therefore, finds it unnecessary to address whether plaintiff properly exhausted this claim.

B.     Retaliatory Disciplinary Report

Plaintiff contends defendant Larson ordered Officer Jankowski to write plaintiff a false disciplinary report on December 1, 2011, in retaliation for plaintiff declaring a mental health emergency. (Doc. 92, p. 8). The defendants assert plaintiff cannot state a claim for retaliation against Larson because plaintiff was convicted of the disciplinary report Jankowski wrote after being afforded due process. (Doc. 106, p. 7-11).

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir.2003). "To prevail, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). However, "[i]f a prisoner is found guilty of an actual

disciplinary infraction after being afforded due process and there was evidence to support the disciplinary panel's fact finding, the prisoner cannot later state a retaliation claim against the prison employee who reported the infraction in a disciplinary report." *O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011).

Due process requires that prisoners receive: "(1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action." *Id.* at 1213. (*citing Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). "Whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact that are decided by the disciplinary panel." *Id.* at 1215. "To find otherwise would render the prison disciplinary system impotent by inviting prisoners to petition the courts for a full retrial each time they are found guilty of an actual disciplinary infraction after having filed a grievance." *Id.* at 1216.

Plaintiff alleges defendant Larson retaliated against him for declaring a psychological emergency by ordering Officer Jankowski to write plaintiff a false disciplinary report for lewd and lascivious conduct on December 1, 2011. (Doc. 92,

p. 8; doc. 92-1, p. 58).  Plaintiff, however, cannot state a claim for retaliation because he was afforded due process during the disciplinary proceedings and there was evidence to support the disciplinary team's finding.[4]   Plaintiff received advance written notice of the charged infraction because prison staff delivered a copy of the charges to plaintiff on December 6, 2011.  (Doc. 87-2, p. 1).  Plaintiff was also allowed to call witnesses and submit evidence.  During the investigation, plaintiff called his cellmate Donnie Jackson as a witness, who indicated "I didn't see anything. I only heard arguing about putting up something while taking a dump.  I was sleep." (*Id.*, p. 7).  Plaintiff also submitted his own written statement (*Id.*, p. 4) and requested review of surveillance footage from the prison (*Id.*, p. 8).  The disciplinary hearing team reviewed the video footage as requested.  (*Id.*, p. 1).  The hearing team found plaintiff guilty of lewd and lascivious conduct and sentenced him to sixty days of disciplinary confinement.  (*Id.*, p. 1-2).  Plaintiff was provided with the following written statement by the disciplinary team outlining the evidence relied on and the reasons for the disciplinary action:

---

[4] In ruling on the motion to dismiss, the court may consider documents related to the investigation of the disciplinary report.  *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Terrebonne v. Blackburn*, 646 F.2d 997, 1000 (5th Cir. 1981) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports.").

> Based in part on the statement of facts and confirmed by the
> investigation inmate Robinson did commit a lewd or lascivious act.
> Officer Jankowski stated "At approximately 9:30 A.M., I was escorting
> Mrs. S. Fennimore for classifications rounds in wing three (03) in F-
> dormitory when I observed inmate Robinson, Charles FDC#E02878
> standing at his cell door, intentionally masturbating his erect penis while
> staring directly at Mrs. Fennimore."   Inmate called the camera as
> evidence.  "Based upon review of the identified tape or the capabilities
> of the particular taping equipment, the tape requested does not provide
> evidence to support the inmate's statement."   All witness statements
> were read and considered by the team.  He was later provided with a
> copy of the team findings and was advised that he has fifteen days to
> appeal the decision of the team.

(*Id.*, p. 1-2).  Officer Jankowski's statement provides "some evidence" that plaintiff

actually committed the charged infraction.  *See Hartsfield v. Nichols*, 511 F.3d 826,

831 (8th Cir. 2008) ("[A] report from a correctional officer, even if disputed by the

inmate and supported by no other evidence, legally suffices as 'some evidence' upon

which to base a prison disciplinary violation, if the violation is found by an impartial

decisionmaker."); *Longstreth v. Franklin*, 240 F. App'x 264, 267 (10th Cir. 2007)

(stating that an incident report satisfies the "some evidence" requirement of

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, 105 S. Ct.

2768, 86 L. Ed. 2d 356 (1985)); *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993)

(stating that disciplinary actions may be taken based only on a guard's report, if found

credible, even when there is substantial evidence to the contrary).  The disciplinary

team relied upon facts in supporting their finding of guilt and did not reach an arbitrary and capricious decision. The minimum requirements of due process were met. Notably, plaintiff's response to the defendants' motion to dismiss does not contend he was denied due process during the disciplinary process. (Doc. 108). Plaintiff, therefore, cannot state a claim against Larson for retaliation.

C.    Verbal Threats

The defendants claim that Larson's and Delapp's alleged threats to spray plaintiff with chemical agents do not constitute an Eighth Amendment violation. (Doc. 106, p. 11). In general, courts have held that verbal harassment, abuse, or taunting is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983. *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (noting that verbal taunts, alone, are insufficient to state a constitutional violation); *Hernandez v. Florida Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (holding that plaintiff's allegations of verbal abuse and threats by prison officials did not state a constitutional claim because the defendants never carried out the threats, and "verbal abuse alone is insufficient to state a constitutional claim"); *see also Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (holding that the sheriff's laughing at inmate and threatening to hang him did not violate the Constitution); *Keenan v. Hall*, 83 F.3d

1083, 1092 (9th Cir. 1996) (reiterating "verbal harassment generally does not violate the Eighth Amendment"); *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) (holding that "[v]erbal threats do not constitute a constitutional violation"); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (holding that threatening language and gestures of a corrections officer do not generally violate an inmate's Eighth Amendment rights).

Other circuit courts have recognized some exceptions to this general rule, namely, where a prisoner alleges he suffered severe psychological harm resulting from a threat to kill accompanied by conduct supporting the credibility of the threat, *see e.g.*, *Northington v. Jackson*, 973 F.2d 1518, 1522 (10th Cir. 1992) (parole officer's holding gun to prisoner's head while threatening to kill him), *Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978) (guard's threat to kill inmate combined with inmate's subsequent transfer from unsupervised work to work detail supervised by armed guards), or resulting from sexual abuse or harassment, *see Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997).  Although plaintiff alleges Larson and Delapp threatened to spray him with chemical agents (and later did), he does not allege the threats themselves resulted in actual harm.  The correctional officers' statements may be relevant to plaintiff's excessive force claim, but plaintiff has failed to state an

independent Eighth Amendment claim based on the verbal threats.

     D.    Equal Protection

Plaintiff alleges the defendants' denial of mental health care violated his rights under the Fourteenth Amendment because he "was treated differently from other inmates." (Doc. 92, p. 11-12). The Equal Protection Clause requires the government to treat similarly situated people in a similar manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To establish an equal protection violation, plaintiff must demonstrate that he is similarly situated to others who received more favorable treatment, and that his discriminatory treatment was based on some constitutionally protected interest, such as race. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). Plaintiff has not alleged the defendants' refusal to provide him with mental health care was based on a constitutionally protected interest. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265, 97 S. Ct. 555, 563, 50 L. Ed. 2d 450 (1977) ("Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

The Supreme Court has recognized "class of one" equal protection claims where a plaintiff asserts that he was irrationally discriminated against on an

individual basis, rather than as a member of a particular group. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). A plaintiff can establish a "class of one" claim by showing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. "To be 'similarly situated,' the comparators must be *prima facie* identical in all relevant respects." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240,1264 (11th Cir. 2010) (quotation and emphasis omitted). Plaintiff, however, has failed to identify any similarly situated individual who was treated differently from him. In civil rights cases, more than conclusory and vague allegations are required to state a cause of action under 42 U.S.C § 1983. Thus, plaintiff's complaint fails to state an equal protection claim against any of the defendants. *See Novak v. Cobb County-Kennestone Hospital Authority*, 849 F. Supp. 1559, 1572 (N.D. Ga. 1994).

E.    Nurse Martin

The defendants assert plaintiff cannot state an Eighth Amendment claim against Nurse Martin because he alleges only that he *declared* a psychological emergency, not that he was actually experiencing one. (Doc. 106, p. 15). "To prevail on a deliberate indifference to serious medical need claim, [plaintiff] must show: (1)

a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1306-07 (11th Cir. 2009) (*citing Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

Plaintiff asserts he told Nurse Martin "he was going to 'commit suicide' and 'kill himself.'" (Doc. 108, p. 4). In addition, plaintiff alleges the defendants did not respond to the declared psychological emergency in accordance with FDOC policy. Prison officials' failure to comply with FDOC policy, however, does not necessarily amount to a constitutional violation. Furthermore, it is unclear what effect, if any, the defendants' failure to provide a mental health evaluation had on plaintiff's psychological or physical condition. *Cf. Osterback v. McDonough*, 549 F. Supp. 2d 1337, 1349 (M.D. Fla. 2008) (noting an Eighth Amendment claim occurred when "an inmate truly was suicidal or otherwise suffered from severe psychological distress, the officer(s) who responded to the declared psychological emergency failed to summon mental health staff despite the inmate's apparent distress, and the inmate thereafter *attempted to commit suicide* (and in one case actually committed suicide) or *otherwise harmed him or herself*") (emphasis added). Although plaintiff's complaint references "lasting psychological injuries," (doc. 92, p. 9), it is not apparent

the psychological injuries stemmed from a lack of medically necessary mental health treatment. If, for instance, plaintiff merely sought to avoid the application of chemical agents by declaring a psychological emergency, he cannot succeed on a deprivation of medical care claim. Moreover, based on the allegations in the complaint, it is doubtful plaintiff will be able to establish a compensable injury based on Nurse Martin's failure to provide an immediate mental health evaluation. Nevertheless, a 12(b)(6) motion is not an appropriate vehicle for resolving these issues. Further factual development is warranted before determining whether Nurse Martin (or Larson and Delapp) violated plaintiff's constitutional rights by refusing to provide him with mental health treatment following his declaration of a psychological emergency. Thus, the Eighth Amendment deprivation of medical care claim should not now be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1. That defendants' motion to dismiss (doc. 106) be GRANTED in part and DENIED in part as follows:

a. Defendants' motion to dismiss plaintiffs' Eighth Amendment conditions of confinement claim based on plaintiff's failure to exhaust his administrative remedies should be DENIED.

Case No. 3:13cv387-LC/CJK

b.    Defendants' motion to dismiss plaintiff's First Amendment retaliation claim concerning the December 1, 2011 disciplinary report should be GRANTED and plaintiff's claim DISMISSED WITH PREJUDICE.

c.    Defendants' motion to dismiss plaintiff's Eighth Amendment claim concerning Delapp's and Larson's verbal threats should be GRANTED and plaintiff's claim DISMISSED WITH PREJUDICE.

d.    Defendants' motion to dismiss plaintiff's Fourteenth Amendment equal protection claim should be granted and plaintiff's claim DISMISSED WITH PREJUDICE.

e.    Defendants' motion to dismiss plaintiff's Eighth Amendment deprivation of medical care against Nurse Martin should be DENIED.

2.    That this matter be referred to the undersigned for further proceedings on: (1) plaintiff's Eighth Amendment conditions of confinement claim against defendant Larson for housing plaintiff in a cold cell; (2) plaintiff's Eighth Amendment excessive force claim against defendants Larson and Delapp for spraying plaintiff with chemical agents on December 3, 2011; and (3) plaintiff's Eighth Amendment deprivation of medical care claim against defendants Larson, Delapp, and Martin for denying plaintiff access to mental health treatment on December 3,

2011.

At Pensacola, Florida, this 4th day of Aprl, 2016.

*s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 3:13cv387-LC/CJK