UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


CHARLES BERNARD ROBINSON, JR.,

      Plaintiff,

v.                                 Case No. 3:13cv387-LC-CJK

D. LARSON, et al.,

      Defendants.

_____/

ORDER and
REPORT AND RECOMMENDATION

      This prisoner civil rights case is before the court on defendants' motion for summary judgment. (Docs. 157, 161, 166). Plaintiff responded in opposition (docs. 167, 169), defendants filed a reply (doc. 170), and plaintiff filed a surreply (doc. 172). The matter is referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the record, the parties' submissions, and the relevant law, the undersigned recommends that the motion for summary judgment be granted in part and denied in part.

BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Florida State Prison. He

initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). In May 2015 he filed the fourth amended complaint, the operative pleading in this action. (Doc. 92). At the time of the events described in the complaint, plaintiff was incarcerated at Santa Rosa Correctional Institution ("SRCI") in Milton, Florida. The complaint names 3 employees of SRCI as defendants: Sergeant Larson, Lieutenant Delapp, and Nurse Martin.

Three of plaintiff's claims remain pending following the resolution of defendants' motion to dismiss. (Docs. 113, 114). Plaintiff alleges: (1) Larson violated the Eighth Amendment by placing plaintiff in a cold cell in December 2011; (2) Larson and Delapp violated the Eighth Amendment by spraying plaintiff with chemical agents on December 3, 2011; and (3) Larson, Delapp, and Martin violated the Eighth Amendment by denying plaintiff mental health treatment on December 3, 2011. As relief, plaintiff seeks nominal and punitive damages.

## FACTS

The facts pertinent to the resolution of the defendants' motion are drawn from plaintiff's verified fourth amended complaint and the evidence in the summary judgment record. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence

presented, in the light most favorable to the plaintiff." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Plaintiff was housed in cell F3215 at SRCI. (Doc. 167, p. 58-59). On December 1, 2011 at 9:00 a.m., plaintiff told Officer Jankowski he was experiencing a psychological emergency. (Doc. 157-7, p. 3-4, 7; Doc. 167, p. 58). He told multiple correctional officers, including defendant Larson, that he was having homicidal and suicidal thoughts. (Doc. 157-7, p. 7; Doc. 161-1, p. 1). Plaintiff was escorted from his cell to a shower unit. (Doc. 167, p. 58). Larson then placed plaintiff on property restriction, which entailed: (1) removing all of plaintiff's clothing except his underwear and shower slides; and (2) transferring plaintiff's cellmate and removing plaintiff's property from his cell. (Doc. 157-7, p. 4-5; Doc. 167, p. 59). Larson also threatened plaintiff, stating that if plaintiff "wants to play mind games and overwork [Larson], . . . plaintiff will be placed on a 'special management meal' and written a disciplinary report[.]"[1] (Doc. 167, p. 59).

While still in the shower stall, plaintiff met with Jeffrey Arney, a mental health specialist, at 10:00 a.m. (Doc. 167, p. 58). Plaintiff described having suicidal and

---

[1] FDOC records show Officer Jankowski wrote plaintiff a disciplinary report for engaging in lewd or lascivious behavior on December 1 at 9:30 a.m. (Doc. 87-2, p. 1).

homicidal thoughts; Arney then "walked away to confer with" Larson and defendant Delapp. (Doc. 157-7, p. 5-6; Doc. 167, p. 59-60). Arney returned to the shower unit and told plaintiff he was being placed on 72-hour self-harm observation status ("SHOS"); plaintiff, however, later learned he was not placed on SHOS.[2] (Doc. 167, p. 59-60).

After meeting with Arney, plaintiff was placed in the propertyless cell; the cell had "a broken window that wouldn't completely close[.]" (Doc. 92, p. 8; Doc. 167, p. 58-60). He remained in the cell on property restriction from December 1 to December 6. (Doc. 167, p. 60).

At approximately 9:00 a.m. on December 3, 2011, Larson and Delapp approached plaintiff's cell and threatened him. (Doc. 92, p. 8). They told plaintiff that they would only use 2 cans of chemical agents on him if he took the agents "to the face head up." (Doc. 92, p. 9). Larson and Delapp retrieved a handheld camera in preparation for using chemical agents. (Doc. 157-2, p. 2). Officer Jacobsen operated the camera. (Doc. 157-2, p. 2). The handheld video footage began at 9:50 a.m.[3]

_____

[2] When an inmate is placed on SHOS, he is housed in a cell in the medical department. (Doc. 167, p. 60). The inmate is visually checked by staff every 15 minutes, and is provided with a hospital gown, blanket, and mattress. (Doc. 157-7, p. 7; Doc. 167, p. 60). In response to a grievance later filed by plaintiff, Arney stated that "security" placed plaintiff on observation.

[3] Due to the audio quality of the recording, not all of plaintiff's or defendants' statements are discernible. In addition, the video does not show all of plaintiff's actions within his cell.

Outside the presence of plaintiff, Delapp and Larson describe on the video events that purportedly preceded the recording. Delapp states plaintiff was creating a disturbance by kicking his cell door and yelling obscenities at staff. Larson indicates he: (1) counseled plaintiff and ordered him to cease his disruptive behavior, but plaintiff refused to comply; and (2) informed Delapp about the situation. Delapp states he also spoke with plaintiff and unsuccessfully asked plaintiff to cease the behavior.

Larson and Delapp then enter the dormitory and walk to plaintiff's cell. Delapp tells plaintiff that he is being given a final order to cease his disruptive behavior and no more warnings will be given before the officers use chemical agents. At that point, plaintiff began stating he was going to kill himself and the officers were retaliating against him. (Doc. 157-7, p. 13-14). He then declared a psychological and medical emergency. (Doc. 157-2, p. 2; Doc. 157-5, p. 14).

After plaintiff declared the emergency, Delapp and Larson summoned Nurse Martin to respond to the medical emergency. (Doc. 157-4, p. 1; Doc. 157-7, p. 16). Plaintiff subsequently told Larson he had a razor and showed it to Larson. (Doc. 157-7, p. 16-17).

When Martin arrived, plaintiff told her he had blood in his urine, which he attributed to kidney stones. (Doc. 157-4, p. 1). Martin asked if plaintiff had been seen by medical staff concerning the issue; he replied that he had and was told to

drink lots of water. (Doc. 157-4, p. 1). Martin, therefore, denied the medical emergency and told plaintiff to access sick call for a follow-up. (Doc. 157-4, p. 1).

Plaintiff also told Martin he was experiencing a psychological emergency. (Doc. 157-4, p. 2). Plaintiff subsequently used the razor to make superficial cuts on his hands. (Doc. 157-7, p. 18). Because Martin is not a mental health professional, she told plaintiff she could not assist him but would contact the mental health department. (Doc. 157-4, p. 2). Martin and Delapp left and informed mental health staff about the situation. (Doc. 157-2, p. 2; Doc. 157-4, p. 2). The mental health staff declined plaintiff's psychological emergency and Delapp relayed that denial to plaintiff in his cell. (Doc. 157-2, p. 2; Doc. 157-4, p. 2). Because plaintiff was no longer acting disorderly, Delapp concluded application of chemical agents was not necessary and directed the camera operator to cease recording. (Doc. 157-2, p. 2-3).

Two hours later, Delapp and Larson returned to plaintiff's cell and Delapp directed Larson to apply chemical agents to plaintiff. (Doc. 157-2, p. 3; Doc. 161-1, p. 2). About 5 minutes after the initial application of chemical agents, Delapp instructed Larson to use chemical agents a second time. (Doc. 157-2, p. 3; Doc. 161-1, p. 2).

The handheld camera footage resumes at 12:40 p.m. Plaintiff is removed from his cell and taken for a decontamination shower. (Doc. 157-2, p. 3). After the shower, plaintiff received a clean pair of boxers and was escorted to the medical

department. Nurse Martin conducted a post-use-of-force examination of plaintiff. (Doc. 157-4, p. 2). Larson returned plaintiff to his cell at 12:54 p.m.

## DISCUSSION

Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590,

594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

Cell Temperature

"The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment that they receive while in prison." *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016). "The Eighth Amendment only guarantees that prisoners are provided with a minimal civilized level of life's basic necessities." *Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 865 (11th Cir. 2008). "If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.'" *Chandler*

*v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981))

"To state an Eighth Amendment claim under § 1983, a prisoner must allege facts to satisfy both an objective and subjective inquiry regarding a prison official's conduct." *Richardson v. Johnson*, 598 F.3d 734, 737 (11th Cir. 2010). "Under the objective component, a prisoner must allege a prison condition that is so extreme that it poses an unreasonable risk of serious damage to the prisoner's health or safety." *Id.* "To satisfy the subjective component, the prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." *Id.* "[D]eliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Plaintiff argues defendant Larson violated the Eighth Amendment by housing plaintiff in a cell with a "window that wouldn't completely close" and without property in December 2011. Larson contends plaintiff has not established the objective component of an Eighth Amendment claim, asserting "[p]laintiff's allegations that he was forced to sit in a cell with a broken window without clothes or a blanket from December 1-3, 2011 are insufficiently serious to implicate the

Eighth Amendment." (Doc. 157, p. 17). The undersigned agrees with the argument set forth by Larson.

Although plaintiff says Larson turned the heat off in F-Dorm, Larson only worked an 8-hour shift during the day. (Doc. 157-7, p. 10-12). Plaintiff admits the heat was turned on at times while Larson was not on duty. (Doc. 157-7, p. 11). Thus, plaintiff was not continually confined in a cell without heat. *See Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) ("[I]t is not just the severity of the cold, but the duration of the condition, which determines whether the conditions of confinement are unconstitutional. . . . A condition which might not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time.").

Furthermore, the outdoor temperature ranges (in degrees Fahrenheit) for the days plaintiff was on property restriction were as follows: on December 1 the high was 63 and the low was 32; on December 2 the high was 70 and the low was 37; on December 3 the high was 73 and the low was 41; on December 4 the high was 71 and the low was 57; on December 5 the high was 75 and the low was 55; and on December 6 the high was 77 and the low was 53. (Doc. 157-5, p. 4). This data does not suggest Larson's decision to turn off the heat in F-Dorm during the day

(combined with plaintiff's lack of property) constituted an extreme deprivation.[4] *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("[E]xtreme deprivations are required to make out a conditions-of-confinement claim."); *cf. Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988) (reversing summary judgment in favor of prison officials where the inmate alleged that for 3 months in the fall and winter of 1983-84: "the large window frames in his cell block were empty and correction officers made things worse by tearing down plastic sheeting partially covering the frames"; the temperatures "were in the subfreezing range for most of that period"; and it was so cold ice formed in the toilet bowl of his cell). Because "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment[,]" *Chandler*, 379 F.3d at 1295, summary judgment in favor of Larson is appropriate on plaintiff's conditions of confinement claim.

Chemical Agents

"Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (*quoting Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)) (alteration omitted). To determine whether force was applied "maliciously

---

[4] The handheld video footage from December 3 shows Delapp and Larson wearing short sleeve shirts and pants while working in F-Dorm.

and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted).

Here, defendants Larson and Delapp argue the use of chemical agents on December 3 was reasonable and necessary to stop plaintiff from creating a disturbance by kicking his cell door and yelling obscenities. The use-of-force video submitted in support of the motion for summary judgment, however, does not document either the application of chemical agents or the events immediately preceding the use of the agents.

Plaintiff maintains he was not creating a disturbance at the time Larson and Delapp sprayed him with chemical agents. (Doc. 92, p. 9; Doc. 92-1, p. 24, 29; Doc. 167). Thus, under plaintiff's version of events, the use of chemical agents was not an appropriate disciplinary response. Crediting plaintiff's version, a jury could conclude Larson and Delapp's use of chemical agents violated the Eighth Amendment's prohibition against cruel and unusual punishment. Summary

judgment, therefore, should be denied with respect to plaintiff's Eighth Amendment excessive force claim against defendants Larson and Delapp.[5]

Psychological Emergency

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *see also Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) ("Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration."). "Under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries, including suicide." *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (11th Cir. 1994)) (citations omitted).

"To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the

---

[5] Defendants also argue the use of chemical agents would be justified to stop plaintiff from harming himself with a razor. Plaintiff, however, asserts he used the razor to cut himself approximately 2 hours before the chemical agents were used. Plaintiff does not claim he was cutting himself with a razor at the time Larson applied chemical agents.

plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.* at 1307 (*quoting Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

To show deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (*quoting Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

To support deliberate indifference, the defendant's response to the medical need must be more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Prison officials may avoid Eighth Amendment liability by showing, for example: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave

rise was insubstantial or nonexistent;" or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Here, plaintiff claims defendants violated the Eighth Amendment by failing to respond appropriately to his declared psychological emergency on December 3. Plaintiff, however, has not established he had a serious mental health need. At his deposition, plaintiff admitted he did not cut his hands with the intent of harming himself but merely to show he was "serious." (Doc. 157-7, p. 18). Without evidence of a genuine intent to harm himself, plaintiff cannot establish defendants violated the Eighth Amendment. *See Watson v. Edelen*, 76 F. Supp. 3d 1332, 1374-75 (N.D. Fla. 2015) ("Given that [the inmate] did not have a genuine desire to harm himself . . . and thus did not have a serious mental health need, he cannot establish an Eighth Amendment violation against Defendants[.]"). Moreover, there is no evidence plaintiff engaged in self-injurious behavior, or otherwise suffered injury, after his psychological emergency was declined. Plaintiff, therefore, has not shown the defendants' handling of the December 3 psychological emergency caused any compensable injury.

Instead, plaintiff appears to base his deprivation of mental health care claim solely on the fact defendants did not comply with FDOC procedures.[6] Specifically,

---

[6] Throughout the response to the motion for summary judgment (and this entire case), plaintiff has emphasized that defendants failed to comply with FDOC regulations or procedures. The defendants' failure to comply with FDOC regulations, however, does not equate to an Eighth

plaintiff asserts he should have been removed from his cell and a mental health specialist should have been summoned to evaluate him. In his deposition, plaintiff stated:

> [Delapp] just told me that my mental health been declined. That's not the procedure. That's an officer. The procedure is if I'm complying -- okay. I was yelling, but I'm willing to come out my cell. Okay. He was supposed to remove me from that cell, got anything that will harm me, have m[e] evaluated. That's by law, you know what I'm saying. Then once they evaluate me and make sure I'm straight, they got a full-body diagram of a naked person -- they supposed to have done a full-body diagram, but they covered everything up. [Nurse Martin] failed to document my 9:00 o'clock [mental health emergency or injuries of cutting] it's on camera, but you would never see it.

(Doc. 157-7, p. 21; Doc. 166-1, p. 7-8). But in light of the fact plaintiff was not experiencing a serious mental health need, defendants' failure to contact a mental health specialist to examine plaintiff in person is irrelevant. Summary judgment, therefore, should be entered in favor of defendants Larson, Delapp, and Martin on plaintiff's Eighth Amendment deprivation of mental health care claim.[7]

---

Amendment violation. *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (noting prison regulations are "primarily designed to guide correctional officials in the administration of a prison," not "to confer rights on inmates"); *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) ("[F]ailure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence.").

[7] Defendants also argued they are entitled to qualified immunity with respect to the conditions of confinement and mental health care claims. Because the undersigned finds plaintiff has failed to establish a constitutional violation on either claim, an independent discussion of qualified immunity is not warranted. *See Jackson v. West*, 787 F.3d 1345, 1352 (11th Cir. 2015) ("We focus on two questions: first, . . . whether there is an underlying constitutional violation, [and] second, . . . whether the law the public official is alleged to have violated was clearly established at the time of incidents giving rise to the suit.") (quotations and citation omitted).

42 U.S.C. § 1997e(e)

The Prison Litigation Reform Act ("PLRA") provides "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  Defendants claim plaintiff cannot recover compensatory or punitive damages under the PLRA because he suffered only *de minimis* injuries from the use of chemical agents on December 3, 2011.

In response, plaintiff makes it abundantly clear that he is not seeking compensatory damages.  (Doc. 167, p. 34-35).  In addition, he does not argue the chemical agents caused more than *de minimis* injuries.  Instead, he claims he is entitled to punitive damages because the defendants' actions were "motivated by evil intent."  (Doc. 167, p. 34).

Plaintiff, however, has no entitlement to punitive damages.  "Under the statute and [Eleventh Circuit] caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury." *Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015); *see also Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011) (PLRA precludes the recovery of punitive damages in the absence of physical injury); *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000)

("compensatory damages under § 1983 may be awarded only based on *actual injuries* caused by the defendant and cannot be presumed or based on the abstract value of the constitutional rights that the defendant violated"). Because plaintiff does not argue he suffered more than *de minimis* physical injuries, his claim for punitive damages is barred by 42 U.S.C. § 1997e(e). Thus, based on the foregoing, summary judgment should be granted in favor of defendants with respect to plaintiff's prayer for punitive damages.

Accordingly, it is ORDERED:

1.     Plaintiff's "Motion for Extension of Time to Respond Adequately to Defendants' Filed Summary Judgment" (doc. 163) is GRANTED to the extent that plaintiff's response to defendants' motion for summary judgment is accepted as timely filed.

2.     Plaintiff's "Motion to Supplement Court Records" (doc. 173) is GRANTED. The grievance response was given due consideration before issuing this report and recommendation.

And it is respectfully RECOMMENDED:

1.     That defendants' motion for summary judgment (docs. 157, 161, 166) be GRANTED IN PART and DENIED IN PART as follows:

a.     the motion for summary judgment be granted as to plaintiff's Eighth Amendment conditions of confinement claim against defendant Larson;

      b.    the motion for summary judgment be denied as to plaintiff's Eighth Amendment excessive force claim against defendants Larson and Delapp;

      c.    the motion for summary judgment be granted as to plaintiff's Eighth Amendment deprivation of mental health care claim against defendants Larson, Delapp, and Martin;

      d.    the motion for summary judgment be granted as to plaintiff's claim for punitive damages.

    2.    That this matter be referred to the undersigned for further pretrial proceedings on:

      a.    plaintiff's Eighth Amendment excessive force claim against defendants Larson and Delapp for nominal damages.

At Pensacola, Florida, this 31st day of August, 2017.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties.   A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.